*FILED*

DEC 01 2022

JUDGE JOHN J. THARP, JR.
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

GEE SIONG KOK

No. 20 CR 688-2

Judge John J. Tharp, Jr.

### PLEA AGREEMENT

1. This Plea Agreement between MORRIS PASQUAL, the Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515, and defendant GEE SIONG KOK, and his attorney, EUGENE MURPHY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to steal trade secrets, in violation of Title 18, United States Code, Section 1832(a)(5) (Count One), and theft of trade secrets, in violation of Title 18, United States Code, Sections 1832(a)(3) and (a)(4) (Counts Two through Five).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiring to steal trade secrets, in violation of Title 18, United States Code, Section 1832(a)(5).  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than on or about June 8, 2007 and continuing until at least on or about June 22, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant GEE SIONG KOK did knowingly conspire with Hytera Communications Corporation, Ltd. ("Hytera"), Yih Tzye Kok ("YT"), Samuel Chia Han Siong ("Chia"), Phaik ee Ooi ("Ooi"), Wong Kiat Hoe ("Wong"), Yu Kok Hoong ("Hoong"), and Chua Siew Wei ("Chua") and others to violate Title 18, United States Code, Sections 1832(a)(1), (2) and (3), all in violation of Title 18, United States Code, Section 1832(a)(5).

Hytera was a telecommunications company headquartered in Shenzhen, China. Motorola Solutions, Inc. ("Motorola") was a telecommunications company headquartered in Schaumburg, Illinois with offices worldwide, including in Malaysia. Both Hytera and Motorola previously sold mobile radios that relied on analog technology to transmit and receive communications. In approximately 2008, however, the U.S. Federal Communications Commission (FCC) set a deadline of 2013 by which radio products would need to operate on a narrow channel bandwidth of 12.5 kHz (previously it was 25kHz or less) and announced that radio products would ultimately be required to operate within bandwidths of 6.25 kHz or less. This change effectively forced manufacturers to move to digital technology, which was better able to handle the narrow bandwidth requirement.

Defendant knew that hundreds of Motorola employees worldwide spent years developing the hardware and software solutions to design, manufacture, market, and sell digital mobile radios (DMRs). Defendant also knew that by approximately 2007, Motorola was offering DMR products for sale to the public. DMRs were used for instantaneous, reliable communications, such as by police, fire department, and other emergency services. Some of these customers built their radio infrastructure around a specific product and entered into years-long contracts related to the DMR products.

By at least June 2007, an executive at Hytera ("Executive 1") had begun to recruit defendant to leave Motorola in Malaysia and start working for Hytera in the

3

People's Republic of China. During the recruitment of defendant, Executive 1 and defendant met in person multiple times.

At the time of his recruitment to Hytera, defendant was the Senior Engineering Manager responsible for DMR products at Motorola. On multiple occasions, Executive 1 told defendant that he wanted to develop Hytera's DMR product in a two-year time frame. Defendant believed that it would take several more years to develop a DMR product like Motorola's. Executive 1 told defendant to take Motorola's technology, including source code for DMR products, and use it at Hytera to develop the technology faster.

Before defendant joined Hytera and while defendant was at Hytera, Executive 1 requested and defendant agreed that they would steal Motorola's DMR technology. To accomplish this task, defendant recruited multiple Motorola employees and told them to steal Motorola trade secrets, including Motorola's proprietary source code related to DMR. Defendant started working at Hytera in approximately February 2008. Defendant earned a higher salary at Hytera and had the opportunity to purchase valuable stock options. Defendant earned approximately $1,253,766 during his employment at HYTERA. Defendant's title was Director of Research and Development and defendant reported directly to Executive 1. Defendant was eventually made a member of Hytera's Board of Directors.

The employees that defendant recruited from Motorola were YT, Chia, Wong, Hoong, and Chua. Defendant knew that YT recruited Ooi to Hytera after YT joined Hytera. These employees worked at Motorola's facility in Penang, Malaysia.

In part because of defendant's instruction, co-defendants YT, Chia, Wong, Hoong, and Chua accessed and copied confidential, proprietary and trade secret Motorola information, including Motorola's DMR source code, without Motorola's knowledge or consent. This information was downloaded from Motorola's servers in Malaysia. These co-defendants then provided this information to Hytera without Motorola's knowledge or consent.

More specifically, YT and Chia, who had access to Motorola's files, were responsible for stealing the source code from Motorola and they maintained possession of the stolen code. They gave pieces of Motorola's software code as needed to Hytera's engineers.

Defendant acknowledges that when the defendants accessed Motorola documents from Malaysia, those requests were first routed through a Motorola server in the Northern District of Illinois before retrieving the information from servers in Connecticut or Delaware. Similarly, defendant acknowledges that while some Motorola documents were locally cached on computers in Malaysia, when a request for that document was made, the network would still perform a "checksum" function to ensure that the document was the most recent version. This checksum would involve routing data through a Motorola server in the Northern District of Illinois.

5

As instructed by Executive 1, Defendant told Chia that he should take as much information as he could take from Motorola and everything related to DMR. Chia, with others, stole proprietary Motorola DMR information, including the source code. Hytera engineers used Motorola's stolen trade secret information.

Ooi was recruited by YT to serve as a software development project manager to manage all the software development that was ongoing at Hytera. Defendant went to Executive 1 to get approval to hire Ooi and Executive 1 approved hiring Ooi.

While at Motorola, defendant supervised Wong, Hoong, and Chua. Defendant selected Wong because Hytera needed someone who (1) could develop testing parameters for Hytera's products and (2) was familiar with DMR testing. Hoong was chosen because of his expertise in synthesizer design and familiarity with the timing restrictions imposed by TDMA or Time Division Multiple Access. Chua was also chosen for her experience with synthesizer design.

As a result of Executive 1's instruction and defendant's efforts, and the efforts of other Hytera employees taken at defendant's instruction or with his agreement, Hytera's DMR used source code stolen from Motorola. Defendant was aware that Hytera marketed and sold its DMR, which relied on Motorola's stolen trade secret information and technology, including Motorola's source code, around the world. Defendant acknowledges that Hytera's DMR was sold in the Northern District of Illinois at least as recently as November 2019.

6

Defendant knew that certain information stolen from Motorola and used by Hytera in its DMR product were Motorola trade secrets. More specifically, defendant acknowledges that he knew that certain stolen information, such as Motorola's source code, were trade secrets because Motorola took reasonable security measures, related to both physical security and cyber security, to keep the information secret and that the information had independent economic value from not being public. Namely, Motorola was able to market and sell its DMR product based on this trade secret information, while Hytera was still in the research and development stage with its DMR product. Defendant also knew that Hytera needed to rely on the stolen Motorola information to develop its DMR product.

Based on the stolen trade secrets, Hytera was able to develop a DMR product by 2010. The product used and relied on stolen Motorola technology.

Defendant acknowledges that the theft of trade secrets from Motorola caused at least $252,100,000 in pecuniary harm to Motorola in the form of lost profits to Motorola. This loss is calculated as the approximate profit Motorola would have earned from selling additional DMRs instead of Hytera selling its stolen radios which relied on and used Motorola's trade secret technology.

On September 22, 2017, Defendant testified in a deposition as part of In the Matter of: Certain Two-Way Radio Equipment Systems, Related Software and Components Thereof, 337-TA-1053, before the United States International Trade Commission. Defendant acknowledges that during the deposition, and under oath,

he provided materially false testimony related his involvement in the theft of trade secret information from Motorola described above.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

     a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

9

b.     **Offense Level Calculations**.

i.     The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.    The offense level is increased by 26 levels, pursuant to Guideline § 2B1.1(b)(1)(N), because the loss amount is more than $150,000,000.

iii.   The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(10)(B), because a substantial portion of the fraudulent scheme was committed from outside of the United States.

iv.    The offense level is increased by 4 levels, pursuant to Guideline § 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved 5 or more participants.

v.     A two-level enhancement applies pursuant to §3C1.1 because defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction and the obstructive conduct related to the defendant's offense and of conviction and any relevant conduct.

vi.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

10

the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 37 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 210 to 262 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

11

e.    Pursuant to Guideline § 5G1.1(a), because the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the guidelines sentence is the statutorily authorized maximum sentence of 120 months' imprisonment.

f.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

g.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable

12

provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court. Defendant further understands that the government reserves the right to make

whatever recommendation it deems appropriate regarding the extent of any downward departure.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    Regarding restitution, defendant acknowledges that the total amount of restitution owed to Motorola Solutions, Inc. is $252,100,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

14

16. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

20. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

15

21.     Defendant agrees to the entry of a personal money judgment in the amount of $1,003,012 which represents proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

22.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to Motorola pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

23.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 688-2.

25.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

26.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

17

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      b.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this

19

Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

27.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

28.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

29.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

30.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

31.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32.     If requested by the United States, defendant agrees to voluntarily appear in the United States at any court proceeding, including his sentencing hearing, or to serve his criminal sentence. If a sentence of imprisonment is imposed by the United States District Court, defendant agrees to surrender himself to United States law enforcement to serve that sentence on the same day as his sentencing hearing.

33.     Unless prohibited by law, the government agrees not to contest a request or motion by defendant to remotely conduct his change of plea hearing.

34.     If applicable, defendant agrees not to contest extradition to the United States and agrees to waive any rights he has to oppose extradition from any country in which he may be found. Upon the filing of an extradition request by the United States of America, defendant agrees to appear before the relevant authority, such as a magistrate judge, and not to contest extradition.

35.     If defendant applies for an international prison transfer out of the Bureau of Prisons, the U.S. Attorney's Office for the Northern District of Illinois agrees not to oppose the transfer request. Defendant acknowledges and understands,

however, that the transfer decision rests in the sole discretion of the Office of International Affairs ("OIA") of the Criminal Division of the United States Department of Justice and that the position of the U.S. Attorney's Office for the Northern District of Illinois is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OIA. Defendant further understands that in addition to OIA, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer.

36.  Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant also recognizes that pleading guilty may have consequences with respect to his immigration status in countries other than the United States. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

23

37.     Defendant agrees to return or destroy all Motorola confidential, proprietary, or trade secret information in his custody, care, or control.

### Conclusion

38.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

39.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24

40. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

41. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

42. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: December 1, 2022


MORRIS PASQUAL
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515

GEE SIONG KOK
Defendant


STEVEN J. DOLLEAR
MELODY WELLS
VIKAS DIDWANIA
Assistant U.S. Attorneys

EUGENE MURPHY
Attorney for Defendant


25